GEORGE CLINTON
1300 Hendrix Road
Tallahassee, Florida 32301
Tel:

In pro se.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENDRICKS & LEWIS PLLC, a Washington professional limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE CLINTON, an individual,<br><br>Defendant. | Case No. CV10-09921 ODW(PLAx)<br><br>**OPPOSITION OF DEFENDANT GEORGE CLINTON TO MOTION FOR ASSIGNMENT ORDER, RESTRAINING ORDER, AND TURNOVER ORDER**<br><br>Date: February 14, 2011<br>Time: 1:30 p.m. |

## I. ASSIGNMENT

Plaintiff Hendricks and Lewis PLCC ("H&L") seeks an assignment of one hundred percent of Mr. Clinton's music royalties.

Before a court issues an assignment order, the court many consider *all* relevant factors. *Cal. Code Civ. Proc.* § 708.510 (emphasis added). These relevant factors include:

1) The reasonable requirements of a judgment debtor who is a natural

1
OPPOSITION OF DEFENDANT GEORGE CLINTON TO MOTION FOR ASSIGNMENT ORDER,
RESTRAINING ORDER, AND TURNOVER ORDER

person and of persons supported in whole or part by the judgment debtor;

2) Payments the judgment debtor is required to make or that are deducted in satisfaction of other judgments and wage assignments, including earnings assignment orders for support;

3) The amount remaining due on the money judgment; and

4) The amount being or to be received in satisfaction of the right to payment that may be assigned. *Id.*

In taking into account the totality of Mr. Clinton's circumstances, an assignment of one hundred percent of his royalty income is unreasonable and unnecessary. Unlike many workers who earn a monthly salary, Mr. Clinton's income comes from royalties and live performances. (Declaration of George Clinton ("Clinton Decl.") ¶¶ 8, 13, 14, 17.) The live performances and tours help promote the amount of royalties generated. (Clinton Decl. ¶ 16.) However, the expense for the tour manager, band payroll, band travel expenses, tour bus, agent commission and manager commission deplete and generally exceed the touring revenues. (Clinton Decl. ¶ 16.) Mr. Clinton cannot maintain his current level of touring and income production with the levies and liens in place. (Clinton Decl. ¶ 24.)

Although H&L claims that Mr. Clinton can achieve financial security from his musical performances, he cannot. (Clinton Decl. ¶ 17.) The money earned from live performances do not support the touring, the music business operations, and Mr. Clinton's personal expenses. *Id.* H&L do not have any evidence to support this claim.

Mr. Clinton supports not just himself, but a whole team for the performance and promotion of his music. These people include the tour manager,

the band, and his management team. (Clinton Decl. ¶¶ 18, 19.) Additionally, Mr. Clinton supports his daughter. (Clinton Decl. ¶ 19.)

Because the touring revenue falls short of paying for Mr. Clinton's monthly expenses, some of Mr. Clinton's royalty revenues are clearly required to pay Mr. Clinton's staff, operations, and personal expenses. (Clinton Decl. ¶ 19.)

Since Mr. Clinton is a natural person supporting a whole staff, assigning one hundred percent of his royalty income is excessive. In contrast, if Mr. Clinton was a typical wage earner, H&L would at most be able to garnish only 25% of his disposable earnings for the week. *See, eg.* 15 U.S.C. § 1673(a)(1). Mr. Clinton spends 200-250 days on the road touring with live performances to drive his royalty income. (Clinton Decl. ¶¶15, 16.) H&L plans to take the entirely of his royalty income.

H&L has a judgment for $1,675,639 plus additional attorney fees of $60,786.50 (in aggregate, the "Judgment"). (Clinton Decl. ¶ 7.) H&L is protected with liens and garnishments in excess of that amount. (Clinton Decl. ¶¶ 8, 9, 12.) It has already garnished a royalty stream from BMI estimated at $50,000 per quarter, which amounts to $200,000 per year. (Clinton Decl. ¶ 12, Exh. 2.) Additionally, among H&L's liens is a lien on the proceeds from an action filed against defendants Universal Music Group, Inc. and UMG Recordings, Inc. for millions of dollars of unpaid royalties. (Clinton Decl. ¶ 8.) Since H&L's judgment is secured, there is no urgency or need for an assignment.

## II. RESTRAINING ORDER

H&L seeks to restrain Mr. Clinton from encumbering, assigning or disposing his rights to payments due or to become due from royalty payors. A restraining order is discretionary with the court. *See Cal. Code Civ. Pro.* § 708.520(b). There must be a showing of need for the order. *Id.* H&L's protests

do not rise to the level of "need."

As mentioned above, H&L's Judgment is secured by garnishments and liens. Based on H&L's garnishment of BMI royalties, if the Court does nothing they will be eventually garnishing 100% of the royalties. (Clinton Decl., ¶12, Exh. 1.)

H&L disingenuously complains Mr. Clinton has taken an advance against the BMI royalty stream. This complaint is misplaced because Clinton for years has traditionally taken advances against the BMI royalty stream and is no longer taking, or could take, any advances. (Clinton Decl., ¶ 12, Exh. 1.)

H&L complains that Mr. Clinton assigned 25% of his royalty stream to a charitable organization, the Barack Obama Green Charter High School, a charity for which Mr. Clinton has been active. (Clinton Decl., ¶27, Exh. 4.) However, this meager encumbrance does not block H&L from getting its Judgment repaid. At worst it may only affect how fast H&L gets paid. Further, if the Proposed Order is granted, H&L's complaint about the BMI encumbrance will be moot because they will be able to garnish one hundred percent of Mr. Clinton's BMI royalty stream regardless of third party interest such as the Barack Obama charity. (Clinton Decl., ¶ 12, Exh. 1.)

Finally, H&L protests they are not able to garnish the bank account of a two member limited liability company, The C Kunspyruhzy, LLC. (Clinton Decl., ¶ 21.) However, The C Kunspyruhzy is not a judgment debtor. Whether or not H&L can garnish the bank account of The C Kunspyruhzy is a matter to be considered by a federal district court in the Northern District of Florida. *Id.*

The money in The C Kunspyruhzy bank account was for the purpose of paying touring expenses, including band members. *Id.* This money, then, is earmarked for the support of Mr. Clinton's staff.

In short, H&L's real concern is that they are not getting paid fast enough

and that, to date, Mr. Clinton has not arranged for a specific repayment plan. However, in the last four months H&L only collected approximately $50,000. ($39,304.79 on October 13, 2010 + $8,621.00 on November 24, 2010). (Motion, 1:17-21.) There does not appear to be an overriding need for faster payments.

### III. TURNOVER ORDER

With respect to H&L's request for a turnover of documentary evidence of title to property or of a debt owed to the judgment debtor, there must be a need for such order. *Cal. Code Civ. Pro.* § 699.040(b). It is believed H&L already has that information. They represented Mr. Clinton from 2005 to August 2008. (Clinton Decl., ¶ 2.) They claim they were getting paid from Mr. Clinton's royalty income. And they have placed garnishments and / or levies on his sources of income, including BMI royalties and the proceeds of the lawsuit against Universal Music Group, Inc. and UMG Recordings, Inc. (Clinton Decl., ¶¶ 8, 12.) It can be inferred that H&L is familiar with Mr. Clinton's royalty streams already. There is no need for any further order.

### IV. PAYMENT OF JUDGMENT / SETTLEMENT CONFERENCE

Mr. Clinton intended to pay the Judgment from i) a percentage of royalties received from BMI after a loan taken out from the BMI royalties is paid off; ii) a percentage of music royalties received from Universal Music Group; and iii) proceeds from litigation against Universal Music Group, Inc. and UMG Recordings, Inc., case number CV-07-00672-PSG(JWJx). (Clinton Decl., ¶ 8.)

Additionally Mr. Clinton has commited to making payments of $10,000 per month to H&L to help pay down the Judgment, provided there is not an assignment and turnover of his music royalties and provided H&L is permitted to levy or garnish only a reasonable percentage of the BMI and Universal Music

Group royalties.

In an effort to resolve the matter, Mr. Clinton is willing to participate in a settlement conference before the Court, or other Court-assisted facilitation, to discuss a payment plan which utilizes a portion of the royalty streams. (Clinton Decl., ¶ 24.)

## V.   CONCLUSION

For the reasons set forth above, Mr. Clinton respectfully requests the Court deny H&L's Motion. Mr. Clinton further requests any assistance the Court can provide in facilitating a reasonable payment plan for the Judgment.

Dated: January 24, 2011

By: *George Clinton*
George Clinton, Defendant
*In Pro Se*