1  ROBERT J. ALLAN (SBN 119010)
2  allan@rjallanlaw.com
   ROD RUMMELSBURG (SBN 201628)
3  rod@rjallanlaw.com
   ALLAN LAW GROUP P.C.
4  22917 Pacific Coast Highway, Suite 350
5  Malibu, CA 90265
   Telephone:  (310) 456-3024
6  Facsimile:  (310) 317-0484
7
8  Attorneys for non-party ALLAN LAW GROUP P.C.
9

10                 UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA
12

13  HENDRICKS & LEWIS PLLC, a          )  Case No.  CV10-09921 ODW(PLAx)
14  Washington professional limited    )
    liability company,                 )
15                                      )  **OPPOSITION OF NON-PARTY**
16             Plaintiff,              )  **ALLAN LAW GROUP, P.C. TO**
                                        )  **PLAINTIFF'S MOTION FOR**
17             vs.                      )  **ASSIGNMENT ORDER,**
18                                      )  **RESTRAINING ORDER, AND**
    GEORGE CLINTON, an individual,      )  **TURNOVER ORDER**
19                                      )
20             Defendant.              )
                                        )  Date:   February 14, 2011
21                                      )  Time:   1:30 p.m.
22                                      )
                                        )
23  _____  )

24  ///
25  ///
26  ///
27  ///
28

                                        1

## I.    INTRODUCTION

Allan Law Group, P.C. ("ALGPC") is not a party to the current action but will be adversely affected by creditor Hendricks & Lewis PLLC's ("H&L") proposed order ("Proposed Order") in connection with this Motion for Assignment Order, Restraining Order, and Turnover Order.

Based on the Proposed Order, ALGPC will not be able to be paid for legal services rendered in matters on behalf of defendant George Clinton ("Clinton"). The legal matters on which ALGPC is working, such as litigation to collect royalties or damages from unauthorized use of Mr. Clinton's sound recordings, will likely increase the value of Mr. Clinton's estate and, in turn, benefit H&L.

ALGPC acknowledges that H&L has a money judgment ("Judgment") for unpaid legal fees against Mr. Clinton.  ALGPC acknowledges that the Judgment should be paid.

## II.    BACKGROUND

H&L represented Mr. Clinton in a number of legal matters from 2005 to approximately 2008.  (Motion, Neely Decl. ¶ 73.)

In approximately July 2008 H&L successfully petitioned the court to be relieved as counsel just days before trial in case number CV-07-00672-PSG (JWJx), pending in the U.S. District Court for the Central District of California, entitled  *George Clinton v. Universal Music Group, Inc. and UMG Recordings, Inc.* (the "UMG Action") (Declaration of Rod Rummelsburg ("Rummelsburg Decl.") ¶¶ 11-13, and Exh. 7 & 8 thereto.)  Clinton is still seeking $15,000,000 in damages from unpaid royalties from the defendants in the UMG Action. (Rummelsburg Decl. ¶ 9.)

After receiving one-million five hundred eighty-five dollars and eighty seven cents ($1,000,578.87) from, or on behalf of, Mr. Clinton for H&L's legal

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION
FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER

services, H&L sought and obtained a default arbitration award for additional attorneys' fees in excess of one million five hundred dollars ($1,500,000) in a private binding arbitration in Washington State. (Rummelsburg Decl. ¶¶ 2-3, and Exh. 1.)

On information and belief, Mr. Clinton did not appear or otherwise participate in the arbitration and had no representation at the arbitration evidentiary hearing. (Rummelsburg Decl. ¶ 3.)

After the evidentiary hearing, in approximately January 2010, Mr. Clinton retained ALGPC. (Rummelsburg Decl. ¶ 9.) ALGPC tried without success to set aside the arbitration and subsequently tried to challenge the confirmation of the arbitration award. (Rummelsburg Decl. ¶¶ 4-5, Exh. 2.) An arbitration award in excess of one million six hundred thousand dollars ($1,600,000) plus interest was confirmed. (Rummelsburg Decl. ¶ 5.) It was not appealed. (*Id.*)

ALGPC subsequently performed additional legal services for Mr. Clinton. For example, ALGPC represented Mr. Clinton in a fee dispute with the accounting firm of Wlodinguer & Erk, CPA's PLLC ("Wlodinguer Firm") in the U.S. District Court, Southern District of New York ("Wlodinguer Action") (Rummelsburg Decl. ¶ 6, and Exh. 3.) Mr. Clinton settled with the Wlodinguer Firm and the case was dismissed with prejudice on January 10, 2011. (*Id.*)

ALGPC performed and is performing consulting services for Mr. Clinton in the UMG Action. (Rummelsburg Decl. ¶ 9.)

Furthermore, ALGPC filed, on behalf of Mr. Clinton, a lawsuit against members of The Black-Eyed Peas, a musical group, and additional defendants including Universal Music Group, Inc., UMG Recordings, Inc. and EMI Blackwood Music, Inc., in the United States District Court, Central District of California for copyright infringement of a sound recording owned by Mr. Clinton

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER

(the "BEP Action"). (Rummelsburg Decl. ¶ 7.) The BEP Action is currently pending. (*Id*.)

On December 1, 2010, APGPC filed a UCC Financing Statement with the California Secretary of State for the payment of certain legal work performed on behalf of Mr. Clinton, including legal work performed in the UMG Action and the Wlodinguer Action, secured by a "chose in action" against the BEP Action. (Rummelsburg Decl. ¶ 16, and Exh. 4.) On reliance on this financing, ALGPC performed and continues to perform certain legal work on behalf of Mr. Clinton. (Rummelsburg Decl. ¶ 17.)

Subsequently, on January 3, 2011 H&L filed a Notice of Lien on the BEP Action. (Rummelsburg Decl. ¶ 8, and Exh. 5.)

On or about December 27, 2010, H&L filed the current Motion for Assignment Order, Restraining, Order, and Turnover Order ("Motion"). At that time H&L also sought and obtained a Temporary Restraining Order ("TRO") against Mr. Clinton without notice.

The TRO was extended to the hearing date of this Motion, February 14, 2011.

Outside of California, H&L is attempting to enforce its Judgment in Florida. On August 16, 2010, H&L registered a foreign judgment in the U.S. District Court, Northern District of Florida ("Florida Court"). (Rummelsburg Decl. ¶ 18.) This action involves a motion to garnish money paid and to be paid into two accounts related to George Clinton and an entity of which he is a managing member, The C Kunspiracy, LLC, a Florida limited liability company ("Florida Action"). Mr. Clinton filed a claim of exemption on behalf of The C Kunspyruhzy.

One of the issues the Florida Court is expected to consider is whether The C Kunspyruhzy has enough members to trigger an exemption to garnishment. In

its Proposed Order, H&L incorrectly states that the 2010 Limited Liability Company Amended Annual Report for The C Kunspyruzy, LLC sets forth Mr. Clinton as the only member of The C Kunspyruhzy.   (Motion, Neely Decl., ¶17, and Exh. 7.)  This exhibit makes no representation that it lists *all* the members of The C Kunspyruhzy.  It only lists the *managing* member of The C Kunspyruhzy. A declaration by Scott Carswell was filed in connection with the case in which Scott Carswell identifies himself as another member of The C Kunspyruhzy, and received his membership interest in consideration of lending approximately $30,000 to $40,000 to Mr. Clinton and providing past and ongoing consulting. (Rummelsburg Decl., ¶19, and Exh. 11.)

H&L's Proposed Order similarly seeks the turnover of all royalties due or to become due to The C Kunspiracy, LLC.  (Motion, 2:1-10.)  The Florida action is still pending.  (*Id.*)

## III.    THE PROPOSED ORDER EXCEEDS THE SCOPE OF WHAT IS REQUESTED IN H&L'S MOTION

H&L's Proposed Order ostensibly asks for royalty streams from a specific list of articulated entities to be paid to the Marshall, Central District of California. (Proposed Order ¶¶ 1, 4.)  However, as drafted, the Proposed Order is far broader in scope.

The Proposed Order seeks *all* rights to payment of money, rights to payment of money from third parties, and claims against third parties, to include any person acting on George Clinton's behalf, for monies due from a list of companies, including Universal Music Group, Inc. and UMG Recordings, Inc. (in aggregate the "UMG Companies").  (*Id.*)

ALGPC opposes this Proposed Order because it overlaps with ALGPC's secured interest in the BEP Action.  UMG Companies is one of the defendants in

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION
FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER

1  the BEP Action that ALGPC expects to obtain a judgment on or settlement with

2  on behalf of George Clinton.  (Rummelsburg Decl. ¶ 7.)  H&L cannot claim a

3  priority right to *all* payments made by UMG Companies to George Clinton

4  because ALGPC has already obtained a clear UCC Financing Statement securing

5  its payment for the work on the BEP Action and other actions with the outcome

6  of the BEP Action.  (Rummelsburg Decl. ¶ 16.)

7       The Proposed Order is even more galling with respect to H&L's history

8  with the UMG Action.  In July 2008 H&L successfully petitioned the court to be

9  removed as counsel from the UMG Action, leaving Mr. Clinton as a *pro se* party

10  shortly before trial.   Now, H&L seeks to give themselves a priority to the

11  anticipated judgment or settlement from the UMG defendants, taking priority

12  over any payment to the attorneys who actually make such settlement or

13  judgment possible.

14       Section 3 of the Proposed Order is also unfair to attorneys such as ALGPC

15  who perform work on behalf of Mr. Clinton to recover royalties.  Specifically, it

16  prohibits and enjoins Mr. Clinton from even negotiating or collecting rights to

17  payment of money or claims for payment of money due from third parties.

18  (Proposed Order, ¶ 3.)  As drafted, the Proposed Order prevents Mr. Clinton or

19  his representative from enforcing Clinton's right to seek redress from artists or

20  companies that have infringed or are infringing on his ownership of master

21  recordings.   Constraining George Clinton from enforcing his ownership and

22  royalty rights against defendants like UMG Companies and the Black Eyes Peas

23  would adversely affect both his and his creditors' financial interests.

24  ///

25  ///

26  ///

27  ///

28

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION
FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    H&L's PROPOSED ORDER IS MISPLACED BECAUSE PUBLIC POLICY FAVORS ATTORNEYS' LIENS OVER CREDITORS' SUBSEQUENT LIENS TO ENCOURAGE LEGAL REPRESENTATION

It would be inequitable to give H&L's legal fees priority over ALGPC's legal fees because ALGPC has and continues to rely on payment for their valuable legal work. *See McBain v. Santa Clara Sav. & Loan Ass'n*, 241 Cal. App. 2d 829, 836 (1966) ("[I]t would be inequitable and unjust to withhold from those persons who have by their labor and materials enhanced the value of the property…").

Public policy also favors attorneys' liens over creditors' subsequent liens to encourage legal representation. *Cetenko v. United Cal. Bank*, 30 Cal. 3d 528, 536 (1982).  The Supreme Court of California directs that public policy supports the finding that attorneys' liens should prevail over the lien of subsequent creditors because "persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit." *Id.*   The Proposed Order subverts third party firms from attempting to collect royalties which are needed to satisfy H&L's Judgment.

It is also notable that H&L's Notice of Lien in the BEP Action was filed *after* ALGPC had already recorded a UCC Financing Statement.  The UCC filing was the security and financing mechanism relied upon by ALGPC to continue providing legal services to Mr. Clinton.

ALGPC is entitled to priority over H&L for the monies recovered in the BEP Action as a matter of equity and public policy.

///

///

///

7

## V.    H&L'S PROPOSED ORDER IS OBJECTIONABLE AND IMPROPER BECAUSE IT SUBVERTS ALGPC'S EQUITABLE LIEN ON RECOVERY FROM THE BEP ACTION

A law firm or attorney can have an equitable lien on the proceeds of an action. *See County of Los Angeles v. Constr. Laborers Trust Funds for So. Cal. Admin. Co.*, 137 Cal. App. 4th 410, 415 (2006) (holding an attorney had an equitable lien on funds due to the client debtor and priority to receive those funds over another creditor).    A court looks at five factors in ascertaining that an attorney has an equitable lien:   i) whether the client-debtor was aware of the circumstances that the attorney was relying on to recover his fees; ii) whether the attorney detrimentally relied on the existence of a security interest; iii) whether the attorney's conduct deserved the protection of a court of equity; iv) whether the client-debtor and attorney acted throughout under the assumption that a security interest existed; and v) whether the client-debtor would have been unjustly enriched if he retained the funds that the attorney had earned as attorneys' fees. *Id.*

All five factors set forth in the paragraph above are met and establish ALGPC has an equitable lien for attorney services in the BEP Action: i) Mr. Clinton was aware of and consented to ALGPC filing of the UCC Financing Statement on December 1, 2010, setting forth ALGPC's right to recover certain legal fees from the "chose in action" against the Black-Eyed Peas and other defendants (Rummelsburg Decl. ¶ 17.); ii) ALGPC detrimentally relied on the existence of a security interest and on such reliance provided legal services to Mr. Clinton in the Wlodinguer Action and UMG Action, among other legal services (Rummelsburg Decl. ¶¶ 16-17, and Exh. 9.);  iii) ALGPC's conduct deserves the protection of a court of equity because ALGPC, by filing and prosecuting the BEP Action, is potentially increasing the assets of Mr. Clinton's estate to the

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION
FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER

1  extent ALGPC wins a settlement or judgment;  iv) Mr. Clinton and ALGPC have

2  continued to act under the assumption that a security interest existed, as

3  evidenced by ALGPC's recording of the UCC Financing Statement, filing the

4  BEP Action, and representing Mr. Clinton to a successful resolution in the

5  Wlodinguer Action; and v) Mr. Clinton would be unjustly enriched if ALGPC is

6  not fully compensated for their legal services.  Among other things ALGPC

7  resolved the Wlodinguer Action and potentially increased the value of Mr.

8  Clinton's estate by filing the BEP Action.

9         H&L's Proposed Order should not be so broad as to extinguish ALGPC's

10  equitable lien.

11

12  **VI.    THE PROPOSED ORDER IS UNNECESSARY TO SATISFY THE
13           JUDGMENT**

14         Any right to a payment to be assigned is limited only to the extent

15  *necessary* to satisfy the judgment.    *Cal. Code of Civ. Proc.* § 708.510(d)

16  (emphasis added).  H&L's requests are unnecessary because they are not in need

17  of emergency payments, there is evidence of recent payments, and the pre-

18  existing liens will adequately cover the Judgment.

19         The Motion does not mention that H&L will suffer any harm by continuing

20  to get paid over time.  Further, and to the contrary, during the course of its

21  representation, H&L was willing to wait to get paid from some of Mr. Clinton's

22  royalty streams.  H&L even admits it has collected almost fifty-thousand dollars

23  ($50,000) from Mr. Clinton in the last four months ($39,304.79 on October 13,

24  2010 + $8,621 on November 24, 2010). (Motion, 1:17-21.)

25  ///

26  ///

27  ///

28

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION
FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER

## VII. THE PROPOSED ORDER, AS DRAFTED, IS IMPROPER BECAUSE IT SEEKS TO UNDERMINE THE JUDICIAL AUTHORITY OF U.S. DISTRICT COURT, NORTHERN DISTRICT OF FLORIDA

H&L improperly seeks to recover monies from The C Kunspyruhzy, LLC in both the Proposed Order and a pending Florida Action. (Motion, 2:1-10; Rummelsburg Decl. ¶18, and Exh. 10.)   The Florida case against The C Kunspyruhzy is still pending. (Rummelsburg Decl. ¶18, and Exh. 10.)

On or about August 16, 2010, H&L filed an action in Florida Court to enforce its Judgment. (*Id.*) Specifically, H&L is attempting to garnish monies from The C Kunspiracy, LLC's account, of which George Clinton is a managing member. (*Id.*) The issue before the Florida Court is whether certain exemption(s) under Florida law apply to the garnishment. The Florida Court will hear the issue on the merits. (*Id.*)

Similarly, the Proposed Order seeks to garnish all monies received by and redirect all future payments made to The C Kunspyruhzy. (Proposed Order, pp. 2-3.) H&L is using this Court to potentially deny The C Kunspyruzhy any exemptions and stripping the Florida Court of authority to make such determination. H&L should be equitably estopped from doing so. All references to "The C Kunspyruhzy" should be deleted out of the Proposed Order.

## VIII. H&L SHOULD NOT BE REWARDED FOR BREACHING CLIENT CONFIDENCES

An attorney practicing in California is required to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." *Cal. Bus. & Prof. Code* § 6068(e).

H&L has not preserved Mr. Clinton's secrets. H&L admits they were retained to represent Mr. Clinton from 2005 to August 2008 with respect to music

10

1  licenses and other aspects of his business.  (Motion, Neely Decl. ¶ 3.)  H&L is
2  now using what they learned in the course of representation of Mr. Clinton
3  against Mr. Clinton in their quest for additional legal fees.  Not only is H&L
4  publishing details of Mr. Clinton's business operations, they are even revealing
5  how Mr. Clinton paid money into the H&L client trust account. (Motion, Neely
6  Decl. ¶¶ 26-27, 31.)

7       We are not aware of any attempt by H&L to file the Motion under seal.
8  We are not aware of any attempt by H&L to even warn Mr. Clinton that H&L
9  would be publicly revealing Mr. Clinton's business information.  H&L did the
10 opposite.   They filed the Motion and obtained a TRO without notice to Mr.
11 Clinton.

12      While H&L is privileged to collect on a judgment for attorneys' fees, they
13 should not be rewarded for flagrantly and gratuitously revealing proprietary client
14 information learned in the course of representation.

15

16 **IX.   CONCLUSION**

17      H&L's requests are overly-broad, unwarranted, and unnecessary.  First, the
18 requested relief unfairly hinders ALGPC's ability to collect payments for their
19 legal services.  In addition, H&L's Motion would put an unnecessary economic
20 stranglehold on Mr. Clinton.

21      H&L has been receiving money from Mr. Clinton and knows it will
22 eventually be paid in full as a result of Broadcast Music, Inc. (" BMI") and other
23 royalty streams.  While some security interests have been held by the US Bank on
24 Mr. Clinton's BMI royalties since before H&L obtained a judgment, H&L admits
25 the encumbrance is temporary, and that the BMI revenue stream will be a
26 lucrative sources of revenue.  (Motion, 21:19-24.)  H&L has made no showing

27

28

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION
FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER

1  that taking one hundred percent of Mr. Clinton's royalties is *necessary* to satisfy
2  the judgment.

3      H&L's requests also run the risk of undermining the judicial authority of
4  the U.S. District Court in the Northern District of Florida.

5      For the reasons set forth above, Allan Law Group P.C. requests that any
6  Order issued by the Court to H&L be narrowly tailored, to the extent that any
7  such Assignment, Restraining or Turnover Order is even necessary to satisfy the
8  Judgment.

9

10  Dated:  January 24, 2011        ALLAN LAW GROUP, P.C.

11

12           By: *Rod Rummel*
13             Robert J. Allan
14             Rod Rummelsburg
            Attorneys for Allan Law Group, P.C.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION OF NON-PARTY ALLAN LAW GROUP, P.C. TO PLAINTIFF'S MOTION
FOR ASSIGNMENT ORDER, RESTRAINING ORDER AND TURNOVER ORDER